# Globe Mutual Life Ins. Ass'n v. Amelia Ahern, Adm., etc.

1. INSURANCE—*Burden of Proving the Falsity of Answers to Questions in Applications.*—When an insurance company pleads the falsity of statements in an application for insurance as a defense to an action on the policy, the burden of proving the falsity of such statements is upon the company pleading it.

2. NOTICE—*To an Insurance Agent, When Notice to His Company.*—When an agent of an insurance company has knowledge of the falsity of statements by an applicant in his application for insurance, such knowledge is notice to his company.

**Assumpsit**, on a policy of insurance. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed December 6, 1900.

**Statement.**—The appellant insurance association, May 4, 1895, issued its policy of insurance to John Ahern, upon his written application therefor, agreeing to pay the sum of $1,000 to the legal representatives of said Ahern within sixty days after the acceptance of proof of death of said assured, at a premium of $5.24, payable on or before the 4th days of May, August, November and February in every year during the existence of the contract. The policy provides that any failure or neglect to make the payments of the premiums at the time and in the manner specified in the policy should determine the contract.

Ahern died March 6, 1898, and letters of administration upon his estate issued to appellee. Proofs of death of Ahern were duly and regularly made, but the association refused payment upon the policy, and appellee brought suit thereon against appellant in the Superior Court of Cook County, declaring specially on the contract. The association pleaded the general issue and thirteen special pleas, to which replications were filed, and a demurrer to the replications was sustained and carried back to the pleas, except the general issue, whereupon, by agreement in open court, it is ordered that the association might offer in evidence,

under the general issue, any defense that it might make under any special plea, well pleaded.  A trial before the court and a jury resulted in a verdict for appellee of $1,068.75, and judgment thereon, from which this appeal is taken.

At the close of the plaintiff's evidence, and at the close of all the evidence, counsel for defendant moved the court to give a written instruction to the jury, which was then presented, to find the issues for the defendant, which was refused.

Walsh & McArdle, attorneys for appellant.

Kickham Scanlan and Edgar L. Masters, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

It is claimed that the court erred in refusing the instruction to find the issues for the defendant, but we think the contention is not supported by the evidence in the record.

The principal contest on the trial was as to the truth of the statement of the assured in his application for the policy, that he had never made an application for insurance to any other insurance company and been rejected.  The assured answered, in response to questions in his application for the policy in question, in effect that no company had ever declined to grant insurance on his life.  The burden of proving the falsity of this statement was upon the appellant.  The evidence upon the point is conflicting, and justified the jury in finding that the answer was not untrue.  An application made by Ahern to the Prudential Insurance Co. for $500 insurance, under date of March 7, 1895, was offered in evidence, which had indorsed on the margin the word "Declined," and also the words, letters and figures, "Rejected 3—27—95.  R. L. B."  There is no evidence to show how these words, figures and letters came to be indorsed upon this application, nor as to who did it.  The only other evidence tending to show that Ahern had been

rejected by the Prudential Insurance Co. is an alleged statement, signed by the appellee, under date of May 19, 1898, in the office of appellant, and drawn up by its president, to the effect that John Ahern had been rejected, and the further testimony by appellee, on the trial, of a statement made to her by the agent of the Prudential, who made out Ahern's application to it for insurance, viz., " I got your husband no policy." She testified that she did not read the paper drawn up by appellant's president, in its office, and answered the question, " Was it read over to you ? " " Well, after I make the statement, Mr. Barry was reading it." It also appears that appellee could not read without her glasses, and her evidence in this respect is not contradicted. It also appears from the proofs of death, signed by her, that she stated Ahern had not been rejected. The evidence of Barry that one Brenner, who prepared both the application to the Prudential Insurance Co. and to the appellant, was not the agent of appellant, is contradicted by almost conclusive evidence to the contrary, and was sufficient, to say the least, to justify the jury in looking with suspicion upon his other evidence. The statement of the agent, Brenner, to appellee, that he " got her husband no policy," is not inconsistent with his application not having been declined nor rejected. It appears that Brenner was the agent, both of the Prudential and the appellant company, and naturally would prefer to get an insurance of $1,000 than $500, because of the larger compensation to himself. Brenner was not called, nor his absence accounted for, nor was any witness produced to show that, in fact, the assured's application to the Prudential had been declined or rejected.

A claim is also made that appellee made untrue statements in the proofs of loss, but we think the record does not support such claim, and besides, it is immaterial, as no question is made as to the sufficiency of the proofs of loss.

A further claim is made that Ahern's policy lapsed in November, 1896, and that he procured a reinstatement based upon his false statement that he was then in as good

a state of health as when his policy was issued. The burden was upon appellant to establish the falsity of this statement, as to which there is a conflict in the evidence, and we can not say that the verdict of the jury can in this respect be said to be manifestly against the evidence. The doctor who attended Ahern for a sunstroke on July 20, 1896, it is true, testified that he wasn't the same man after the sunstroke as before, and that his health was not as good after the sunstroke as before, but he also testified that Ahern did not suffer constantly from his trouble, the sunstroke. Ahern did not die until nearly two years after the stroke. The doctor treated him only for about a week after the sunstroke, and says that so far as he could judge he was cured, until the attacks were renewed, when he was again called on the 21st of November, 1896, and that his health between July, 1896, and November following, was apparently good. When the effect of the sunstroke re-appeared in November, 1896, the November payment of premium had already been made and accepted by appellant.

Moreover, there is no evidence that the appellant ever took any action with regard to the lapsing of the policy or Ahern's application for reinstatement, and continued thereafter to receive payments of premium up to the death of the assured, and never at any time claimed that the policy had lapsed. No defense seems to have been made in the court below based upon the lapsing of the policy.

Appellant also claims that the provision in the application for the policy, viz., "I also agree that proof of the fact that either the agent taking this application or the examiner has knowledge of facts contrary to any of the answers or declarations hereon shall not make valid a policy or contract of membership issued on the faith of such answers or declarations," should prevent a recovery; but we think not.

As we have seen, the jury were justified in finding from the evidence that the assured did not make false statements in his answers or declarations in his application for the insurance, and that being so, this provision of the policy is of no importance.

It is said that the plaintiff's second instruction was erroneous in that it assumes that the appellant had an agent and that the person who filled out the assured's application was its agent.    The criticism is not well founded, because the instruction requires the jury to make its findings from the evidence.

It is also said the court erred in refusing the defendant's first instruction, which is based upon the theory of collusion or conspiracy between the assured and the agent of the Prudential Insurance Co.    There is no evidence in the record justifying any such instruction, and it was therefore properly refused.

The further claim is made that the defendant's third. instruction should not have been refused.    The substance of it is covered by other instructions given, and besides, was improper and calculated to mislead the jury in that it permits a verdict for defendant in case of a false answer to any question propounded in the application, however immaterial that answer might have been, unless the defendant knew, when it issued the policy, that such answer was false.    It is sufficient that an agent of defendant should know of the falsity of such answer to allow a recovery.    (Security Trust Co. v. Tarpey, 182 Ill. 52–9.)    It is true that the agent's knowledge would be the defendant's knowledge, but a jury might not so understand it, and the instruction was therefore calculated to mislead.

Other points made by counsel we deem it unnecessary to refer to specifically; suffice it to say we have considered them all, are of opinion that there is no substantial error in the record, and that the judgment should be affirmed, which is done.

Affirmed.